RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1488-MR

ROYDALE HOLT                                                          APPELLANT

v.
APPEAL FROM LOGAN CIRCUIT COURT
HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 20-CR-00084

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Roydale Holt brings this appeal from a November 5, 2020, Judgment and Sentence on Verdict After Jury Trial entered by the Logan Circuit Court. Holt was convicted by a jury of robbery in the first degree and possession of a handgun by a convicted felon. The Logan Circuit Court sentenced Holt in accordance with the jury's recommendation of seventeen-years' incarceration for the robbery conviction and five-years' incarceration for the handgun conviction, to

be served concurrently. Holt now appeals his conviction. Upon careful review of the record below, we affirm.

Background

On or about February 27, 2020, Holt traveled from his home in Tennessee to Russellville, Logan County, Kentucky, in a Chevrolet Impala with an acquaintance, Robert Harris. Harris had arranged to purchase a 1985 Oldsmobile from Damien Gilbert on Facebook Marketplace and brought Holt along to drive the Impala back to Tennessee after the purchase. Harris and Gilbert arranged through Facebook Marketplace to meet in Norton Alley, behind Mutt's Liquor Store, in Russellville. The Oldsmobile needed some mechanical work before it could be driven, so Harris and Gilbert worked on the car for a period of time that day before finalizing the sale. Harris then paid Gilbert six hundred dollars ($600) for the Oldsmobile in three 100-dollar bills and fifteen 20-dollar bills.

Gilbert testified that after he received the money from Harris, he began picking up tools in the alley. At that time, he was then confronted by Holt. Gilbert testified that Holt held a gun at his right side and demanded Gilbert give him the money. Gilbert began to beg for his life and ultimately handed Holt the money he had just received from Harris along with his cellphone. Holt then ran back to the Impala and left the scene in the automobile, following Harris, who was

in the Oldsmobile waiting for Holt to depart. Harris witnessed the robbery and his testimony regarding events that day closely aligned with Gilbert's.

As soon as Harris and Holt pulled away, Gilbert called 911. Officer Tony Robinson of the Russellville Police Department was the first to respond at the scene. Body camera footage indicated that Gilbert told Officer Robinson that he had received eight hundred dollars ($800) for the Oldsmobile, but also told him he was paid in three 100-dollar bills and fifteen 20-dollar bills. Later, in a written statement given at the Russellville Police Department, Gilbert again stated Harris had paid him eight hundred dollars ($800) for the Oldsmobile, but listed the denominations as three 100-dollar bills and fifteen 20-dollar bills.

After leaving Norton Alley, Harris and Holt went to a nearby gas station and purchased food. Harris testified that Holt got into the passenger side of the Oldsmobile to eat and put a gun into the glove compartment. Shortly thereafter, detectives arrived on the scene. Harris gave them permission to search the Oldsmobile and the gun was found in the glove compartment. Harris and Holt were arrested. At the police station, it was determined that Holt had six hundred and one dollars ($601) in his wallet – three 100-dollar bills, fifteen 20-dollar bills, and one 1-dollar bill. Gilbert's cellphone was found along the side of a road and Officer Robinson dusted it for fingerprints. One print matched a known print of Holt's.

At trial, the security surveillance video taken from behind Mutt's Liquor Store was shown to the jury. In the video, the parties appear at a distance. Gilbert, Harris, and Holt were able to identify themselves, one another, and the vehicles in the video. However, at no point is Holt seen brandishing or pointing a gun. The Commonwealth admitted as much in its opening statement and each of the officers and detectives who reviewed the video also admitted in their testimony that a gun is not visible in the footage.

At first, Harris denied any knowledge of the robbery, but later informed police that he had witnessed Holt rob Gilbert. Harris entered into a plea agreement with the Commonwealth and agreed to testify truthfully against Holt. Holt was indicted for robbery in the first degree and possession of a firearm by a convicted felon. Holt represented himself at trial, but the trial court appointed standby counsel who assisted him throughout all aspects of the trial. After a three-day trial, the jury convicted Holt on both charges. This appeal followed.

Holt makes four arguments on appeal: (1) the trial court erred when it denied Holt's motion for a directed verdict; (2) the trial court erred when it allowed the Commonwealth to present rebuttal evidence that was not disclosed in discovery; (3) his conviction for being a convicted felon in possession of a handgun must be vacated due to erroneous jury instructions; and (4) the jury instructions for robbery in the first degree denied Holt a unanimous verdict.

## Standard of Review

Holt recognizes that his arguments to this Court are largely unpreserved and therefore requests palpable error review under Kentucky Rules of Criminal Procedure (RCr) 10.26 which states:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Accordingly, unpreserved error may be noticed on appeal only if it is "palpable" and "affects the substantial rights of a party." RCr 10.26. This Court may only grant relief if it determines "that manifest injustice has resulted from the error." *Id.* "[W]hat a palpable error analysis 'boils down to' is whether the reviewing court believes there is a 'substantial possibility' that the result in the case would have been different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citations omitted). Although Holt asserts that his second argument was preserved, we disagree for the reasons stated herein and also review only for palpable error.

Holt's first argument on appeal seeks palpable error review of the trial court's denial of his motion for a directed verdict. With the assistance of standby counsel, Holt moved for a directed verdict at the end of the Commonwealth's case-in-chief, which was denied by the trial court. Holt then put on his own proof,

including testifying on his own behalf.  Holt did not renew his motion for directed

verdict at the close of his case, nor after the Commonwealth presented rebuttal

testimony.  In Kentucky:

> [I]n order to preserve an alleged directed verdict issue for appeal, <u>criminal defendants must</u>:  (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove.

*Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).

Upon review, we discern no manifest injustice in the denial of Holt's

motion.  The trial court may grant a motion for directed verdict only "if the

prosecution produces no more than a mere scintilla of evidence."  *Commonwealth*

*v. Benham*, 816 S.W.2d 186, 188 (Ky. 1991).  Holt argues the Commonwealth

failed to offer substantial evidence that he was armed with a deadly weapon;

however, he ignores the testimony of Gilbert and Harris, who both testified they

saw a gun in Holt's hand when he demanded Gilbert's money.  Harris further

testified that Holt placed the gun in the glove compartment of the Oldsmobile after

the robbery.  The Commonwealth never claimed the gun was visible in the

surveillance video from Mutt's Liquor Store and, in fact, warned the jury that they

would not see a gun in the video.  The jury was free to believe or disregard the

testimony of both Gilbert and Harris regarding whether Holt used a gun as it was a question of credibility. "It is the job of the jury to evaluate the credibility of witnesses and lend to that evaluation the relative weight they deem fit." *Hatfield v. Commonwealth*, 250 S.W.3d 590, 596 (Ky. 2008) (citing *Gray v. Commonwealth*, 203 S.W.3d 679, 692 (Ky. 2006)).

Holt's second argument is that the trial court committed error pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) because the Commonwealth was permitted to use as rebuttal evidence body camera footage from Officer Robinson that was disclosed for the first time during the trial. Holt argues that under *Brady*, the suppression of material evidence would warrant a new trial. The body camera video showed Officer Robinson dusting and lifting one or two fingerprints from Gilbert's cellphone, but Officer Robinson testified that he dusted and lifted six fingerprints in total. Officer Robinson testified that he usually does not have his body camera on when dusting an item for fingerprints and acknowledged turning it off and on during the process in the instant case. Officer Robinson also testified that he had inadvertently overlooked the footage when looking through files on his computer, but it was turned over to the Commonwealth, who subsequently turned it over to Holt, before the last day of the trial. The trial court allowed the Commonwealth to use the footage as rebuttal evidence because Holt repeatedly put forth the theory that the fingerprints that matched Holt's were actually lifted from

Holt's cellphone rather than Gilbert's, despite testimony from Officer Robinson that Holt's cellphone was never dusted for fingerprints.

Holt contends his second argument is preserved because standby counsel filed a motion *in limine* for any and all body camera footage from any officers that were part of the investigation. We disagree. At trial, Holt and standby counsel objected to the footage only to the extent that it showed one or two fingerprints being lifted prior to when Officer Robinson turned off his body camera. However, the trial court pointed out that the issue raised by Holt looked to *which* cellphone was printed, not the procedure used. Further, Holt was not indicted for theft of the cellphone. When Holt stated the footage did not show what type of cellphone it was, the trial court asked him if his cellphone looked substantially similar to the cellphone in the footage. Holt responded that it did not.

Even if Holt had made a valid *Brady* argument, it would be without merit. *See Brady*, 373 U.S. 83. To wit:

> As a general rule "[t]here is no general constitutional right to discovery in a criminal case and *Brady* did not create one. . . ." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30, 42 (1977). Rather, *Brady* concerns those cases in which the government possesses information that the defense does not and the government's failure to disclose the information deprives the defendant of a fair trial. Therefore, reversal is required only where "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is

the probability sufficient to undermine the confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481, 494 (1985). Moreover, *Brady* only applies to "the discovery, *after trial*, of information which had been known to the prosecution but *unknown to the defense*." *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342, 349 (1976) (emphasis added).

*Bowling v. Commonwealth*, 80 S.W.3d 405, 410 (Ky. 2002).

Holt received the additional body camera footage used by the Commonwealth in rebuttal prior to the end of the trial, and he was able to cross-examine Officer Robinson regarding the footage. We discern no manifest injustice or error by the trial court.

Holt's third argument is that his conviction for being a felon in possession of a handgun must be vacated due to erroneous jury instructions. He does not challenge the fact he is a convicted felon,[1] but rather that the trial court crossed out the word "Arresting" in the portion of the instruction related to his prior felony offense from Tennessee. The jury instruction at issue reads:

You will find Defendant, Roydale D. Holt, guilty of Possession of a Firearm by Convicted Felon [u]nder this instruction if, and only if you believe from the evidence alone and beyond a reasonable doubt all of the following:

A. That in Logan County, Kentucky on or about February 27, 2020[,] and before finding of the Indictment Herein, the

---

[1] Roydale Holt admitted he was a convicted felon during the penalty phase of the trial.

Defendant knowingly had in his possession
a .22 caliber Taurus revolver;

B. That the .22 caliber Taurus revolver was
a handgun as defined below[;]

AND

C. That the Defendant had been previously
convicted of Evading ~~Arresting~~ Motor
Vehicle by Judgment of the Davidson
County Tennessee Circuit Court on
September 16, 2004.

Holt argues that, by crossing out the word "Arresting" in the

instruction, the result is not an offense under Tennessee law. We again review for

palpable error under RCr 10.26.

Even though erroneous jury instructions are presumed prejudicial, "an

erroneous jury instruction may sometimes be an unfortunate, yet ultimately

harmless error." *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008)

(footnote omitted). The presumption of prejudice "can be successfully rebutted by

showing that the error did not affect the verdict or judgment." *Harp*, 266 S.W.3d

at 818 (internal quotation marks and footnote omitted). At trial, Renee Stratton,

Chief Deputy Clerk of the Logan Circuit Court, testified regarding a certified final

judgment from Davidson County, Tennessee. Stratton testified that certified

judgment of conviction indicates that Holt was convicted of a Class E felony in

Tennessee and received a one-year sentence, entered on September 16, 2004. She

further testified that the judgment indicated Holt's offense was Evading Arrest in a Motor Vehicle. Holt did not cross-examine Stratton and the certified copy of the judgment was entered into evidence as Commonwealth's Exhibit 8.

We cannot conclude that striking the word "Arresting" in the jury instruction affected the verdict. Regardless of the exact title of the offense under Tennessee law, the Commonwealth presented uncontroverted proof that Holt had been convicted of a felony in Tennessee in 2004. There could have been no confusion regarding which offense was referred to in the instructions because the Commonwealth introduced evidence regarding only one felony conviction. Stratton's testimony was confirmed by the certified judgment entered into evidence. Finally, the jury recommended the minimum sentence of five-years' imprisonment for this offense, to be served concurrently with the robbery conviction. Under Kentucky Revised Statutes (KRS) 527.040(2), the offense is a Class C felony, punishable by imprisonment for not less than five years, but no more than ten years. Accordingly, there was no manifest injustice warranting reversal. RCr 10.26. Any purported error in the instruction was harmless at best.

For Holt's final argument, he asserts that the jury instructions for robbery in the first degree deprived him of a unanimous verdict. He asserts this is because the jury was offered conflicting evidence as to whether Holt threatened the

use of force by brandishing the gun or used physical force by holding the gun to Gilbert's head. KRS 515.020 states:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he . . . uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he . . . :
>
>> (a) Causes physical injury to any person who is not a participant in the crime; or
>>
>> (b) Is armed with a deadly weapon; or
>>
>> (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.
>
> (2) Robbery in the first degree is a Class B felony[.]

"[I]nstructions in criminal cases should conform to the language of the statute. It is left to the lawyers to flesh out the bare bones in closing argument." *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky. 2006) (internal quotation marks and citations omitted). Here, the jury instruction for robbery in the first degree mirrored the language of KRS 515.020. In closing argument – and also in opening argument – the Commonwealth made clear its theory of the case was that Holt *threatened* the immediate use of physical force upon Gilbert. Although Gilbert told the 911 operator that Holt held a gun to his head, his testimony during trial was that Holt held the gun at his side during the robbery. Gilbert also testified he was frightened and scared for his life when he called 911.

Further, although the video from behind Mutt's Liquor Store was limited, Holt can be seen standing face-to-face with Gilbert for fifteen seconds. At no point does it appear that Holt held a gun to Gilbert's head. Furthermore, Gilbert's written statement to the police does not indicate that Holt held a gun to his head during the robbery. Harris also did not testify that he saw Holt hold the gun to Gilbert's head. Even if we accept Holt's assertion the jury instruction was flawed because it contained what amounts to superfluous language that Holt "used or threatened the immediate use of physical force upon [Gilbert]:"

> [E]rror resulting only from superfluous language does not present a pure unanimity problem. On the contrary, such flawed instructions only implicate unanimity if it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in reaching their verdict. If that can be shown, then a unanimous verdict has been denied and the verdict must be overruled. However, if there is no reasonable possibility that the jury actually relied on the erroneous theory – in particular, where there is no evidence of the theory that could mislead the jury – then there is no unanimity problem. Though such a case presents an error in the instructions, namely, the inclusion of surplus language, the error is simply harmless because there is no reason to think the jury was misled. To the extent *Burnett* [*v. Commonwealth*, 31 S.W.3d 878 (Ky. 2000)] mandates reversal in this latter situation, it is now overruled.

*Travis v. Commonwealth*, 327 S.W.3d 456, 463 (Ky. 2010).

In the instant action, there is no reason to believe any members of the jury were misled into believing the alternate theory that Holt held a gun to

-13-

Gilbert's head.  There was simply no evidence presented to that end. Therefore, there was no palpable error under RCr 10.26.

For the foregoing reasons, the Judgment and Sentence on Verdict After Jury Trial of the Logan Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Erin H. Yang<br>Frankfort, Kentucky | Daniel Cameron<br>Attorney General of Kentucky |
| | Bryan D. Morrow<br>Assistant Attorney General<br>Frankfort, Kentucky |